806 P.2d 897

**BANCAMERICA COMMERCIAL COR-PORATION, a Pennsylvania corporation authorized to do business in Arizona, Petitioner,**

v.

**The Honorable Michael J. BROWN, a Judge for The Superior Court of the State of Arizona, County of Pima, Respondent,**

**and**

**GORDON B. HAMILTON COMPANY, d/b/a Hamilton Aviation, Real Party in Interest.**

**No. 2 CA–SA 90–0127.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 25, 1990.

Review Denied March 19, 1991.

Morrison, Hecker, Curtis, Kuder & Parrish by Mark A. Nadeau, David L. Abney and Stephen B. White, Phoenix, for petitioner.

Douglas P. Mitchell and Mark L. Collins, Tucson, for real party in interest.

## OPINION

FERNANDEZ, Chief Judge.

Petitioner filed a special action to challenge the trial court's order quashing a writ of attachment and releasing an attachment bond. The property involved is the subject of a contract dispute that is to be arbitrated between the parties. Because we believe the trial court abused its discretion in quashing the writ of attachment and releasing the bond, and because petitioner is without an adequate remedy by means of an appeal, we assume jurisdiction and grant relief.

The case stems from a settlement agreement between petitioner BancAmerica Commercial Corporation as creditor and real party in interest Gordon B. Hamilton Company, d/b/a Hamilton Aviation (Hamilton) as debtor. Performance by Hamilton of the terms of the agreement was secured by certain property. Petitioner alleges that Hamilton defaulted by failing to make a final payment of $250,000 and that it either sold or otherwise removed property that secured the settlement agreement.

On July 12, 1990, BancAmerica filed a complaint and application for writ of attachment in Pima County Superior Court and posted an attachment bond. On the same day, the trial court issued a writ of attachment, and the property was formally seized on July 17. On July 30, Hamilton requested a hearing on the merits of the writ of attachment, which was eventually set for August 17. However, on August 3, Hamilton filed a motion to compel arbitration and to dismiss. BancAmerica responded, and a hearing was held on August 6. The following day, the respondent court issued a minute entry that, although stayed in operation until August 15, quashed the attachment and released the attachment bond, giving rise to this special action.

The parties agree that their contractual dispute is subject to arbitration in accordance with paragraph 21 of their settlement agreement, which states:

21. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

It is clear that when a trial court orders a case to arbitration under the parties' contract, it retains jurisdiction to rule on the award resulting from that arbitration. *AlphaGraphics Franchising, Inc. v. Reeder*, 161 Ariz. 127, 776 P.2d 805 (App.1989). Additionally, the trial court may compel arbitration and stay court proceedings pending the arbitration, *see U.S. Insulation, Inc. v. Hilro Construction Co.*, 146 Ariz. 250, 705 P.2d 490 (App.1985), and the parties apparently agree that the trial court retains jurisdiction to do so. The question before us, however, is whether the standard arbitration clause used in the parties' commercial contract necessarily

precludes recourse to the judicial provisional remedy of attachment. The answer is no.

That recourse to judicial provisional remedies does not conflict with arbitration is clear to us from a reading of the arbitration clause in the contract. The contract mandates arbitration to settle "[a]ny controversy or claim." The procedures for enforcing any arbitration award, and specifically the use of provisional remedies, are clearly not covered by the arbitration clause.

Other courts are in agreement that a party may seek provisional remedies without conflicting with the right to arbitrate. In *Salvucci v. Sheehan*, 349 Mass. 659, 212 N.E.2d 243 (1965), the plaintiff sought an equitable attachment of the defendant's real estate, and the court was asked to determine whether that violated the provisions of the arbitration clause in the parties' agreement. Massachusetts, like Arizona, has adopted the Uniform Arbitration Act. The court stated:

> We are of [the] opinion that this provision, taken in the context of the arbitration act, is not inconsistent with the equitable attachment process....
>
> ... Where such an attachment is sought pending the determination of the substantive issues it is the practice to issue a temporary injunction whereby the property is taken into the control of the court and is charged with an equity for the security of the plaintiff.... This, in essence is the relief that the plaintiff requests. The bill, fairly construed, indicates that he is not seeking to deprive the arbitrators of jurisdiction over the issues of law. We see no reason why the Superior Court should not have jurisdiction to bring the property in question within its control pending a determination of the issues of law under the procedure of the arbitration act. If the debt is proved to the satisfaction of the arbitrators, the court may continue within its equity power to do what is necessary for its collection. This is all the plaintiff seeks; he was not attempting to bypass the agreement to arbitrate, which, of course, he could not do.

349 Mass. at 662–63, 212 N.E.2d at 244–245 (citations omitted). The court in *Salvucci* bolstered its decision with the legislative history from the National Conference of Commissioners on Uniform State Laws. In finding that the commissioners had given consideration to the question of jurisdiction for provisional remedies in such cases, the court explained:

> Section 4 of the 1954 draft arbitration act (omitted in the approved Uniform Arbitration Act of 1955) provided: 'At any time prior to judgment on the award, the court on application of a party may grant any remedy available for the preservation of property or securing the satisfaction of the judgment to the same extent and under the same conditions as if the dispute were in litigation rather than arbitration.' National Conference of Commissioners on Uniform State Laws, 1954 Handbook, 206. This section was omitted in the approved act because of the rare occasions when such a section would be needed, and the vigorous objection received from those who feared the section would bring an unwarranted authorization of the labor injunction.... The consideration of the omitted section by the commissioners indicates that the draftsmen of the uniform act assumed that the jurisdiction for, and granting of, such provisional remedies were not inconsistent with the purposes and terms of the act.

349 Mass. at 663–64, 212 N.E.2d at 245.

The Supreme Court of Oregon in *Jackson v. Penny Duquette Knits, Inc.*, 276 Or. 465, 555 P.2d 201 (1976), also found an arbitration agreement to be compatible with an attachment. In that case, when the action was filed in the trial court, the plaintiff attached receivables that were due the defendant. The court noted that in other jurisdictions it had surveyed, courts have held that the remedy of attachment is still available when an action is stayed pending arbitration, citing *Murray Oil Products Co. v. Mitsui & Co.*, 146 F.2d 381 (2d Cir.1944); *Ross v. Blanchard*, 251 Cal. App.2d 739, 59 Cal.Rptr. 783 (1967); *Salvucci v. Sheehan, supra;* and *Auerbach v.*

*Grand National Pictures,* 176 Misc. 1031, 29 N.Y.S.2d 747 (Sup.Ct.), *aff'd,* 263 A.D. 712, 31 N.Y.S.2d 670 (1941). The Oregon court concluded that in the absence of a clear legislative fiat, there was no reason that an arbitration agreement should deprive parties of the benefit of the remedy of attachment.

In *Outdoor Services, Inc. v. Pabagold, Inc.,* 185 Cal.App.3d 676, 230 Cal.Rptr. 73 (1986), the court of appeal found that because attachment is a remedy that is not available through arbitration, the seeking of such relief does not constitute a waiver of the agreement to arbitrate. The court also found that the filing of a cross-complaint in a related action was consistent with the intent to invoke arbitration in the instant case because it did not interfere with the arbitrator's obligation to settle the disputed claim.

The only relevant Arizona authority is *EFC Development Corp. v. F.F. Baugh Plumbing & Heating, Inc.,* 24 Ariz.App. 566, 540 P.2d 185 (1975). In that case, Division One ruled that there was nothing inconsistent with appellee's filing of mechanics' and materialmen's liens after an arbitration proceeding had been initiated, citing *Bolo Corp. v. Homes & Son Construction Co.,* 105 Ariz. 343, 464 P.2d 788 (1970) and *Homestead Savings & Loan Association v. Superior Court,* 195 Cal. App.2d 697, 16 Cal.Rptr. 121 (1961). The court concluded that because appellee did not "invok[e] the machinery of the legal forum to settle the controversies between the parties" but instead first sought arbitration and then recorded the liens, the remedies were compatible, and appellee's conduct could not be interpreted as a waiver of its right to arbitration. 24 Ariz.App. at 569–70, 540 P.2d at 188–89. The court also found that appellee's request for an injunction was "only in aid of arbitration and not inconsistent so as to indicate any waiver on appellee's part." 24 Ariz.App. at 570, 540 P.2d at 189.

The case before us does not concern the question of whether petitioner has waived its right to arbitration by pursuing the remedy of attachment. However, the rea-soning of the cases we have cited is relevant; the provisional equitable remedy of attachment is not inconsistent with arbitration because the legal merits of the underlying claim are left to the arbitrator's domain. Attachment does not settle this dispute. It merely attempts to assure that if it is successful, petitioner will not be left with a nominal victory. The parties agree that they are bound by their agreement to arbitrate. Absent anything contractual or statutory to the contrary, recourse to the remedy of attachment is not precluded. Accordingly, the respondent court erred in quashing the writ of attachment and releasing the attachment bond. The order doing so and the stay entered by this court on August 14, 1990 are therefore vacated.

ROLL, P.J., and HOWARD, J., concur.