NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 44

No. 2016-090

| | |
|---|---|
| Hermitage Inn Real Estate Holding Co., LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Extreme Contracting, LLC | October Term, 2016 |

Helen M. Toor, J.

Darren R. Misenko and William Alexander Fead of Fead Construction Law, PLC, South Burlington, for Plaintiff-Appellee.

Jacob O. Durell and Jasdeep S. Pannu of Stevens Law Office, Stowe, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Defendant Extreme Contracting, LLC appeals from the trial court's order granting a default judgment to plaintiff Hermitage Inn Real Estate Holding Co., LLC in this contract dispute. The court held defendant responsible for enforcing a mandatory arbitration clause in the parties' contract and ordered defendant to "initiate" arbitration by a certain date. When defendant failed to do so, the court considered this a failure to obey a "scheduling order" under Vermont Rule of Civil Procedure 16.2, and as a sanction, it granted a default judgment to plaintiff under Rule 37(b)(2)(C). Defendant argues, among other things, that a default judgment was inappropriate here. It maintains that the court should have granted its motion to dismiss plaintiff's suit given the mandatory arbitration provision, and that as the defendant, it should not

have been required to "initiate" arbitration. It also asserts that the court erred in denying its motion to vacate the default judgment. We agree that the court erred. Notwithstanding the many delays and missteps by defendant's attorney, the court issued an erroneous order, and based on that order ultimately granted a sanction—a default judgment—that was unsupported by the facts and the law. We reverse the court's decision and remand for entry of an order requiring plaintiff to initiate arbitration or face dismissal of its suit.

¶ 2. Given the basis of the court's decision and the nature of defendant's claims on appeal, we must recount the procedural history of this case in detail. In December 2013, the parties entered into a contract pursuant to which plaintiff agreed to pay defendant $681,987.81 to perform certain work at the Hermitage Base Lodge Project. The contract contained the following mandatory arbitration clause:

> In the event of any dispute arising hereunder, the matter shall be submitted to and settled by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association. The parties shall be bound by the decision rendered and such decision may be enforced by any court of competent jurisdiction.

¶ 3. Notwithstanding this provision, plaintiff sued defendant in October 2014, raising breach-of-contract claims and indemnification claims for amounts of liens imposed on the property by defendant's unpaid subcontractors. Plaintiff also moved for an ex parte trustee process under Vermont Rule of Civil Procedure 4.2(b)(3), which the court granted. In mid-January 2015, defendant's principal filed a pro se answer and a counterclaim for $185,000. The principal indicated that defendant could not afford to hire counsel "as a result of financial strain from not being paid," and asked the court for an extension of time or "lessons of the law" to prepare a defense.

¶ 4. Plaintiff apparently did not receive this filing, and on January 20, 2015, it moved for a default judgment based on defendant's failure to answer the complaint. The court denied

2

plaintiff's motion in February 2015. It stated, however, that because defendant was an LLC, it must hire counsel or seek permission to have a nonattorney appear. The court directed defendant to do so by March 6, 2015, or it would strike the pro se answer on plaintiff's motion. Defendant's principal asked for additional time to hire counsel, indicating that he did not know Vermont law and did not believe that he could represent the LLC on his own. The court granted defendant's request, extending the deadline to April 13, 2015. When defendant failed to meet this deadline, plaintiff moved to strike defendant's pro se answer and counterclaim, and moved for a default judgment in its favor under Vermont Rule of Civil Procedure 55(a) for failure to plead or otherwise defend.

¶ 5. Before the court ruled on these requests, Jasdeep Pannu, Esq. entered an appearance on defendant's behalf in mid-May 2015 and asked for an extension of time in which to respond to plaintiff's motions. Plaintiff opposed the request. It cited the delays that had already occurred and argued that the time for counsel to enter an appearance had passed. Plaintiff asked the court to strike defendant's pro se answer, dismiss the counterclaim, and grant it a default judgment. In response to these motions, the court gave defendant until July 24 "to present to the Court some basis for believing that [defendant] has a defense on the merits—an answer must be filed by counsel by that deadline. If an answer is filed, the Motion to Strike will be denied." The court then struck defendant's earlier pro se answer.

¶ 6. Through counsel, defendant filed an answer on July 24, 2015. At the same time, it moved to dismiss plaintiff's complaint and to enforce the mandatory arbitration clause in the parties' contract. Defendant also asked to enlarge the time in which to file counterclaims, which the court granted, but defendant never filed any counterclaims.

¶ 7. Plaintiff opposed these requests. It asked the court to reject defendant's answer as insufficient and to grant it a default judgment. Plaintiff asserted that the denials in defendant's answer did not fairly meet the substance of the averments denied, and that defendant had not

3

provided any grounds for its denials or in any way contradicted facts asserted in an affidavit that plaintiff had offered in support of the ex parte motion for trustee process. Plaintiff maintained that defendant's answer failed to comply with the court's order, that this should be treated as a failure to obey a scheduling order under Rule. 16.2, and that a default judgment should be issued as a sanction under Rule 37(b)(2)(C). If a default judgment was not granted, plaintiff argued that the case should be stayed pending the completion of arbitration rather than dismissed. It cited § 3 of the Federal Arbitration Act, 9 U.S.C.A. § 3, as support for this assertion. Plaintiff further argued that defendant should be required to initiate arbitration under the American Arbitration Association (AAA) Construction Industry Rules by filing a demand for arbitration with the AAA, paying the administrative filing fee, and filing a copy of the applicable arbitration agreement, because defendant was the party seeking to enforce the mandatory arbitration provision in the contract. Plaintiff asked the court to establish a deadline for defendant to initiate arbitration.

¶ 8. In a September 9, 2015 entry order, the court denied plaintiff's motion for a default judgment. It also denied defendant's motion to dismiss, finding that defendant cited no law to support dismissal as opposed to the stay requested by plaintiff. The court thus stayed the case pending arbitration, contingent upon defendant properly initiating such arbitration by October 1, 2015. The court subsequently granted defendant's request for an additional two weeks in which to initiate arbitration.

¶ 9. On October 21, 2015, plaintiff again requested a default judgment in its favor. It argued that defendant failed to meet the court's deadline and that its failure to do so should be treated as a failure to obey a scheduling order under Rule 16.2. Again, plaintiff asked the court to sanction defendant under Rule 37(b)(2)(C) by granting a default judgment in its favor. Plaintiff maintained that defendant's failure to meet the deadline was part of a long pattern in which defendant had deliberately delayed resolution of the case. It argued that defendant's repeated failure to meet court deadlines demonstrated a deliberate and willful disregard for the court's

4

orders and the efficient management of the case. Plaintiff asserted that it had been prejudiced due to the costs associated with the delay in resolving the case.

¶ 10.    In a December 8, 2015 entry order, the court directed defendant to provide proof that it had initiated arbitration as ordered, and if no such proof was filed by December 18, the court indicated that it would grant plaintiff's motion for default judgment. On December 29, 2015, given defendant's failure to initiate arbitration, the court granted plaintiff's October 21, 2015 motion for default judgment "for the reasons set forth in the motion." The court directed plaintiff to submit a proposed judgment to which defendant would have five days to object.

¶ 11.    In April 2016, plaintiff moved for a final judgment. One month later, defendant filed a motion to vacate, a memorandum in opposition to the motion for final judgment, and a request for an enlargement of time in which to file a supplemental memorandum in opposition to plaintiff's motion. In a June 2016 entry order, the court granted plaintiff's motion for final judgment and denied defendant's motions, stating that defendant had failed to present any valid defenses or counterclaim in a year and a half of delays, other than in the cursory answers. The final judgment order reiterates that the court entered a default judgment against defendant as a sanction under Rule 37(b)(2) for the reasons set forth in plaintiff's October 21, 2015 motion for default. The court entered final judgment in plaintiff's favor in the principal amount of $451,441.80. With interest and attorney's fees, the total award was $566,881.03. This appeal followed.

¶ 12.    Defendant raises numerous arguments on appeal, many of which were not raised below. We address only defendant's assertions that the court erred in: denying its motion to dismiss; responding to its motion to compel by requiring defendant to initiate arbitration and then granting a default judgment against it when it failed to do so; and refusing to vacate the default judgment. We find resolution of these arguments dispositive here.

5

¶ 13. We cannot uphold the default judgment on the ground adopted by the trial court. We conclude that the order requiring defendant to initiate arbitration was improper and that a default judgment would not be the proper remedy even if the order were proper.

¶ 14. We begin with the court's ruling on defendant's motion to enforce the mandatory arbitration clause and its request to dismiss plaintiff's case with prejudice. Plaintiff argued that this issue should be decided under the Federal Arbitration Act, and defendant did not contest that position in the trial court and has not contested it here. The trial court rendered its decision under that Act, and we do likewise.[1]

¶ 15. Clause 23.3 of the contract between plaintiff and defendant provided that "[i]n the event of any dispute hereunder, the matter shall be submitted to and settled by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association." There is no question that the contract agreement between plaintiff and defendant required that this dispute be submitted to arbitration, and plaintiff failed to submit it to arbitration. See State v. Phillip Morris USA Inc., 2008 VT 11, ¶ 13, 183 Vt. 176, 945 A.2d 887 ("In deciding whether parties agreed to arbitrate a matter, we apply the ordinary rules of contract interpretation."). Plaintiff does not dispute the application of arbitration but does dispute the applicable remedy.

---

[1] The Federal Arbitration Act provides that a contractual arbitration provision is enforceable if the provision is in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. In Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265 (1995), the United States Supreme Court held that the scope clause meant that the Act applied if the contract in fact affected interstate commerce, in essence employing the limit of Congress's power under the Interstate Commerce Clause of the U.S. Constitution. See id. at 274, 281. The Court concluded that an arbitration provision in a contract between a termite exterminator and a homeowner came under the Act because it involved interstate commerce. Id. at 282.

The provision in the contract in this case is likely governed by the Federal Arbitration Act under this standard, but there was no exploration of this issue in the trial court, and as a result, we do not have a relevant record on which to rely. Thus, we rely upon the lack of any objection to using the Federal Arbitration Act to resolve this case. We note additionally that there is no indication that the result would be different under the Vermont Arbitration Act.

¶ 16. Defendant had two possible remedies and sought both: dismissal of this contract action; and an order requiring that the matter be submitted to arbitration. Plaintiff responded that the action should not be dismissed but should be stayed under 9 U.S.C. § 3 to allow the retention of the prejudgment attachment. Further, it argued that defendant should be required to initiate arbitration because plaintiff had waived its right to arbitration, and defendant was now seeking it. The trial court essentially adopted plaintiff's position, denying the motion to dismiss and ordering defendant to initiate arbitration.

¶ 17. There is a split of authority on whether the Federal Arbitration Act impliedly authorizes dismissal of a civil action where all of the claims are subject to arbitration, or dismissal of claims subject to arbitration. Dismissal is not explicitly authorized in the Act although § 3 authorizes staying the civil action until arbitration is concluded. See 9 U.S.C. § 3 (stating that if suit brought in "any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration," court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," must on party's application "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration"). Some courts have concluded, however, that dismissal is the norm when all claims must be submitted to arbitration. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the [trial] court must be submitted to arbitration.") (collecting cases); Wilczewski v. Charter W. Nat'l Bank, 889 N.W.2d 63, 71 (Neb. 2016) ("[T]here is a slight majority of the courts that allow dismissal, despite the mandatory language of [9 U.S.C. § 3], where all the contested issues between the parties will be resolved by arbitration and the parties will not be prejudiced by dismissal.") (collecting cases); see also Phillip Morris USA Inc., 2008 VT 11, ¶ 1 (affirming trial court's dismissal of suit where claim raised in complaint was subject to

mandatory arbitration provision). Others dispute that dismissal is proper and dispute <u>Alford</u>'s assertion that dismissal is the norm in cases where all claims are subject to arbitration. See <u>Bilyeu v. Johnson Berenson LLP</u>, No. 1:08-cv-02006, 2010 WL 3808375, at *2 (W.D. La. Sept. 27, 2010) (stating that <u>Alford</u>'s assessment of the weight of authority "is no longer true, and most Circuits which have confronted the issue in the interim have flatly declined to follow <u>Alford</u>'s ruling").

¶ 18.  We need not resolve this dispute because dismissal, even if authorized, is subject to the discretion of the trial court, reversible only for abuse of that discretion. <u>Id</u>. at *3.  In this case, plaintiff opposed dismissal to protect its attachment, and defendant did not respond to that reason for granting a stay rather than a dismissal.  The court ruled for plaintiff because defendant provided no authority for denying a stay in these circumstances.  We note that other courts have ruled that a stay is appropriate to protect an attachment granted in connection with a civil suit.  See, e.g., <u>Bancamerica Commercial Corp. v. Brown</u>, 806 P.2d 897, 900 (Ariz. Ct. App. 1990).  The court did not abuse its discretion in denying the motion to dismiss.[2]

¶ 19.  We have a different view, however, of the court's order, in response to defendant's motion, that <u>defendant</u> had the burden of enforcing the mandatory arbitration provision by "initiating" arbitration.  Neither plaintiff nor the court cited any legal support for this proposition, and we find none.  To the contrary, case law, basic notions of fairness, and the plain language of the AAA Construction Industry Rules applicable here, establish that it is plaintiff, not defendant, who must initiate arbitration.  See generally 1 L. Edmonson, Domke on Commercial Arbitration § 18.1 (3d ed. 2008) ("[A]n initial question . . . is whether the arbitration proceeding must be

---

[2] The parties have included only very limited excerpts from the AAA Rules applicable to arbitration of construction industry disputes.  We note that current Rule 38(c) provides that it is not inconsistent with the duty to arbitrate for a party to seek a temporary pre-adjudication order from a judicial forum to ensure assets are available to collect an award.  See Am. Arbitration Ass'n, Construction Industry Arbitration Rules and Mediation Procedures (July 1, 2015), https://www.adr.org/Rules [https://perma.cc/T9TX-ZGVW] [hereinafter AAA Construction Industry Rules].

initiated by the party making the claim or by the party desiring the arbitration. Generally, it is the party seeking substantive relief which must initiate the arbitration, rather than the respondent."); see also In re Bruce Terminix Co., 988 S.W.2d 702, 705 (Tex. 1998) ("[U]nless the parties contract otherwise, the burden to initiate arbitration rests on the plaintiff as the party seeking relief.") (citing cases).

¶ 20.    As the Texas Supreme Court recognized, it would be a "strange[] reversal of the litigants' proper roles" to place the burden of proceeding to arbitration on the party against whom relief is sought. In re Bruce Terminix Co., 988 S.W.2d at 705. Indeed:

> It is antithetical to the interests of such a party to itself initiate a proceeding, be it a court suit or arbitration, that would expose it to the risk of liability. If no arbitration clause existed, [the plaintiff] would have had the task and expense of initiating suit; she could not have required the [defendant] to sue itself. The rule is the same with arbitration substituted for suit: the party seeking relief is the one who must go forward with arbitration proceedings.

Id. (quotations omitted).

¶ 21.    In Bruce Terminix, a defendant successfully moved to compel arbitration after being sued for breach of contract. When the parties could not agree on who should pay the filing fee to initiate arbitration, the plaintiff moved to vacate the motion to compel, arguing that the defendant had waived its right to enforce the arbitration provision by failing to initiate it. The Texas Supreme Court rejected this argument based on the principles above. It held that "absent a contrary agreement, a party against whom a claim is asserted does not waive its right to arbitrate by failing to initiate arbitration of that claim." Id. at 706; see also Chris-Meyers Pontiac-GMC, Inc. v. Perot, 991 So. 2d 1281, 1284 (Ala. 2008) (similarly concluding that defendant company had no obligation to initiate arbitration on plaintiffs' behalf, and therefore could not have waived right to require plaintiffs to arbitrate their claims by failing to start arbitration process after trial court granted its motion to compel arbitration).

9

¶ 22.    The Texas Supreme Court found additional support for its conclusion in the AAA's Commercial Arbitration Rules, which applied under the terms of the parties' agreement.  As with the AAA rules applicable in the instant case, the Commercial Arbitration Rules defined " 'the initiating party' as the 'claimant' and provide[d] that the claimant shall initiate arbitration through a 'demand' containing 'a statement setting forth the nature of the dispute, the amount involved, . . . [and] the remedy sought."  In re Bruce Terminix Co., 988 S.W.2d at 706 (citation omitted).  "[T]he party who file[d] a claim must also pay a filing fee that varies based on the amount of the claim."  Id.  The central rule relied upon by the Texas court is essentially the same as that applicable in construction industry arbitration cases.  See AAA Construction Industry Rules, supra.

¶ 23.    The Texas court concluded that "[t]he duty to define the nature of the dispute and the remedy as provided by [AAA rules] naturally and logically falls on the claimant."  In re Bruce Terminix Co., 988 S.W.2d at 706 (quotation omitted).  "It would be anomalous," the court explained, "to require the party against whom relief is sought to present its opponent's case and pay a filing fee whose amount is based on the size of its opponent's claim.  This scenario is not reasonable and clearly not the design of the rules."  Id.  "By agreeing to the AAA rules," the court continued, the parties "placed the burden of initiating arbitration on the party seeking relief."  Id.; see also Chris-Meyers Pontiac-GMC, Inc., 991 So.2d at 1284 (similarly finding it logical for "aggrieved party" to initiate arbitration by filing demand for arbitration and paying filing fee because aggrieved party is best situation to do so, particularly as filing fee depends on amount of aggrieved party's claim, and finding this consistent with use of term "claimant" in AAA Commercial Arbitration Rules).

¶ 24.    We reach the same conclusion here.  As the entity being sued, defendant did not have the burden to initiate arbitration, and this is underscored by the AAA Construction Industry Rules that govern arbitration of this dispute.  Under these rules, arbitration is initiated when the

10

"initiating party ('the claimant')" files a demand for arbitration with the AAA, along with the administrative filing fee and a copy of the applicable arbitration agreement from the parties' contract. See AAA Construction Industry Rules, supra. The "claimant" must provide a copy of the demand and agreement to the opposing party ("the respondent"). Id. The demand must include "a statement setting forth the nature of the claim including the relief sought and the amount involved." Id. As above, the filing fee depends on the size of the claim. These responsibilities fall naturally and logically to plaintiff as the party seeking relief.

¶ 25. We reject plaintiff's argument that it could not be required to initiate arbitration because it waived its right to arbitration when it filed this lawsuit. This argument is based on plaintiff's view that it had a right to initiate arbitration but no duty to do so. This argument is fundamentally at odds with the effect of arbitration contracts. See 1 Edmonson, supra, § 21.1 ("The arbitration clause, like any other contractual provision, is meant to be carried out voluntarily by the parties as a legal obligation.").

¶ 26. We also reject plaintiff's argument that defendant waived the right to have plaintiff initiate arbitration by failing to raise it in the trial court. The trial court ordered defendant to initiate arbitration, and defendant sought to comply.

¶ 27. We therefore hold that the court erred in responding to defendant's motion to enforce by granting the request but ordering defendant to initiate arbitration. See BankAmerica Housing Servs. v. Lee, 833 So. 2d 609, 618 (Ala. 2002) ("When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision.") (citing cases). The court's order was inconsistent with the terms of the parties' arbitration agreement and the governing law. See id. (similarly concluding that court erred in granting motion to enforce arbitration when it required, among other things, that defendant pay all fees and expenses of arbitration, which was contrary to provisions of agreed-upon AAA Commercial Arbitration Rules). As in BankAmerica Housing Services, we conclude that the "court erred when it mandated

11

mechanism and procedures inconsistent with the mechanisms and procedures set out in the Rules." Id.; cf. Mangiafico v. Street, 767 So. 2d 1103, 1104-1105 (Ala. 2000) (concluding that court did not abuse discretion in dismissing plaintiffs' action for failure to initiate arbitration as ordered, and arbitration agreement provided that matter must be submitted to arbitration "on the written request of one of the parties").

¶ 28.    We turn now to the sanction—the default judgment against defendant.  Because the order imposed an invalid arbitration initiation obligation on defendant, defendant's violation of this order cannot support the award of a default judgment to plaintiff as a sanction under Rule 37(B)(2)(C).  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (observing that it is necessarily an abuse of discretion where ruling is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence"); see also Hefty v. Strickhouser, 2008 WI 96, ¶ 65, 752 N.W.2d 820 (reversing trial court's decision to sanction plaintiff for failing to comply with scheduling order, which resulted in dismissal of her suit with prejudice and grant of summary judgment to defendant, where trial court erroneously exercised its discretion by entering scheduling order that incorporated void local rule).

¶ 29.    We note, moreover, that we cannot conclude that the proper remedy was to award a default judgment against defendant even if we assume that the court could properly require that defendant initiate arbitration.  In support of this remedy plaintiff argued that the order to initiate arbitration was a "scheduling order" under Rule 16.2.  That rule provides that a violation of a scheduling order can be sanctioned under the specific sanctions authorized by Rule 37(b)(2)(B) or (C).  Rule 37(b)(2)(C) authorizes as a sanction "rendering a judgment by default against the disobedient party."  Plaintiff sought the default judgment sanction, and the court awarded it.

¶ 30.    We have several difficulties with this argument. Rule 16.2 provides that "[a]fter a pretrial or discovery conference or after a hearing called for that purpose, the court may enter or amend a scheduling order" that provides a cut-off date for pretrial motions, the date by which third

12

parties may be brought into the action, and the date that the case will be tried or considered ready for trial. V.R.C.P. 16.2(i)-(v). A scheduling order "controls the subsequent course of the action," and its terms "shall be determined with reasonable accommodation to litigants and their counsel and shall be modified where necessary to prevent manifest injustice." V.R.C.P. 16.2. The order here does not fit within the plain language of the rule. There has been no pretrial or discovery conference or a hearing called for that purpose, and the order does not fit within any of the categories identified above.

¶ 31. Second, we have been reluctant to authorize litigation-ending sanctions except in "the most flagrant cases." Rathe Salvage, Inc. v. R. Brown & Sons, Inc., 2008 VT 99, ¶ 12, 184 Vt. 355, 965 A.2d 460. Consistent with that policy, we held in John v. Medical Center Hospital of Vermont, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978), with respect to a litigation-ending sanction, "it is necessary that the trial court indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." We also note that the sanction of a default judgment is specifically authorized by Rule 16.2 for "a failure to appear for trial as directed," suggesting this sanction is reserved for violations of this magnitude. The default judgment in this case does not meet the standards of John.

¶ 32. Third, and most important, the sanction is inconsistent with the nature of defendant's action in the context of the Federal Arbitration Act. Defendant in a timely fashion invoked its right under the contract to require this dispute be resolved in arbitration. Failure to follow through on this remedy can be a waiver of its right to arbitration. See generally LaFrance Architect v. Point Five Dev. S. Burlington, 2013 VT 115, ¶¶ 24-25, 195 Vt. 543, 91 A.3d 364; 1 Edmonson, supra, § 23.2. The consequence of a waiver is loss of the right to arbitrate, returning the case to litigation. See Sink v. Aden Enters., Inc., 352 F.3d 1197, 1201-02 (9th Cir. 2003). We find no support in the Federal Arbitration Act, or the cases decided under it, to also impose a

litigation-ending sanction on the party who waived the right to arbitrate. Accordingly, we cannot conclude that the default judgment sanction was appropriate here.

¶ 33. We recognize that plaintiff justified its request for a litigation-ending sanction by noting the "long pattern in which [defendant] has deliberately delayed resolution of this matter." Plaintiff argued that a default judgment was appropriate because defendant failed to file a timely answer and failed to hire an attorney to represent it despite the order of the trial court. While we understand plaintiff's frustration with the delays in this case, these issues were raised in earlier default motions, and in each case the trial court denied the motion, finding that defendant had sufficiently complied with the requirements imposed on it. We cannot reopen those decisions to justify the sanction plaintiff seeks. Also on this point, we emphasize that much of the delay in this case and any resulting prejudice arose from plaintiff's failure to seek and initiate arbitration when it became ripe.

¶ 34. Finally, we address plaintiff's contention that defendant failed to preserve its arguments with respect to the arbitration order and the order granting a default judgment. Defendant rarely complied with deadlines imposed by the court or by the applicable rules. When it responded, it frequently failed to raise the proper arguments to support its position either at the time that those arguments were required or, in some cases, at all. Nevertheless, we have a strong preference that litigation be decided on the merits and not by default judgment. Ying Ji v. Heide, 2013 VT 81, ¶ 6, 194 Vt. 546, 82 A.3d 1160 (recognizing that "the law favors disposition of cases on their merits"); see also Desjarlais v. Gilman, 143 Vt. 154, 158-59, 463 A.2d 234, 237 (1983) (recognizing that "[g]enerally, the rules relating to default judgments should be liberally construed in favor of defendants, and of the desirability of resolving litigation on the merits, to the end that fairness and justice are served").

¶ 35. Following the trial court's decision granting plaintiff's motion for a default judgment, and at the direction of the trial court, plaintiff prepared a proposed judgment and a

14

motion that it be entered, along with a memorandum justifying the amount of the judgment. Defendant did not respond to the motion within fifteen days as required by Rule 78(b)(1) but thereafter moved to vacate the court's order granting the default judgment on the basis that granting a default judgment based on defendant's failure to arbitrate would be unjust. Plaintiff responded in part that the motion was untimely because defendant did not respond to its motion within the time allowed by Rule 78. Although the trial court did not appear to rule on this procedural basis, plaintiff has argued it here as a ground for rejecting defendant's appeal.

¶ 36. The consequence of failing to file a response to a motion within fifteen days is specifically stated in the rule: "If a memorandum in opposition is not timely filed when required under this rule, the court may dispose of the motion without argument." V.R.C.P. 78(b)(1). We have never held that a greater consequence from the failure could be imposed, and the Reporter's Notes indicate that the rule was primarily addressed to circumstances where a party fails to indicate that an evidentiary hearing is required. See Reporter's Notes—1990 Amendment, V.R.C.P. 78. In any event, plaintiff is trying to use the rule to prevent a motion to reopen an entry of default, rather than a response to the motion to enter the proposed judgment. We cannot conclude that the rule prevents such a motion.

¶ 37. Very likely because of the weakness of plaintiff's procedural objection, the trial court appeared to answer defendant's motion on the merits, holding that because of defendant's extensive delays in responding to the case, a default judgment could be entered. In essence, this is the decision on appeal, and defendant preserved in its motion at least one of the grounds on which we have decided there is error. Before we look at the merits of this ruling we consider the basis of the court's authority, the nature of defendant's motion, and the standard defendant had to meet to be successful.

¶ 38. As reflected above, the court's order regarding arbitration does not appear to be a "scheduling order" under Rule 16.2, the violation of which would empower the court to "impose

15

the sanctions provided in Rule 37(b)(2)(B) or (C)," including "rendering a judgment by default against the disobedient party." V.R.C.P. 37(b)(2)(C). Given this, we conclude that Rule 55, which governs default judgments, provides the appropriate framework for our analysis here. Rule 55 is based largely on Federal Rule of Civil Procedure 55. See Reporter's Notes, V.R.C.P. 55. Under Rule 55, issuance of a final judgment by default is a two-step process. See UMG Recordings, Inc. v. Stewart, 461 F. Supp.2d 837, 840-41 (S.D. Ill. 2006). First, the court, by the clerk or the judge, must enter a default and then, second, issue a judgment of default that contains the terms of the judgment. See Singh v. Mortensun, 30 P.3d 853, 855 (Colo. App. 2001) (decided under similar Colorado Rule of Civil Procedure 55) ("As a threshold matter, we note that the entry of default and the entry of a default judgment are separate and distinct. The entry of default merely establishes the defaulting party's liability. When a default has been entered, but damages have not been proven, there is no final judgment. Thus, the entry of default is simply an interlocutory order that, alone, determines no rights or remedies."). As a result, a defendant has two opportunities to challenge the ultimate default judgment. The defendant may move to set aside the entry of default on a showing of good cause. V.R.C.P. 55(c). If the default judgment has been entered, the defendant may move to set aside the judgment on one of the grounds set forth in Rule 60(b). Id. In this case, the court's order granting plaintiff's motion for default served as the entry of default once docketed. Defendant's motion to vacate came after that order but before the granting of the default judgment. As a result, the standard for granting defendant's motion is good cause.

¶ 39.     At least in this context, the term "good cause" is not defined, and we have no decisions construing it. It has, however, been defined by federal courts and state courts in jurisdictions that have adopted a default rule modeled on the federal rule. These decisions indicate that the standard to set aside a default—good cause—is less rigorous than that in Rule 60(b) to set aside a default judgment and, as a result, easier to meet. See generally 10A C. Wright, Fed. Practice & Procedure: Civil § 2692 (4th ed. 2016) (recognizing that "federal courts are willing to

16

grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment"); see also Thomas v. Thompson, 653 A.2d 417, 420 n.2 (Me. 1995) (recognizing distinction between "good cause" and "excusable neglect" under Rule 60(b), and stating that "excusable neglect standard of Rule 60(b)(1) is more stringent than the good cause standard of Rule 55(c)"); Sundown Operating Co. v. Intedge Indus. Inc., 681 S.E.2d 885, 888 (S.C. 2009) (reasserting "the basic legal premise that the standard for granting relief under Rule 60(b) is more rigorous than under Rule 55(c), and that an entry of default may be set aside for reasons that would be insufficient to relieve a party from a default judgment"); Harwood Grp. v. LaRocco, 631 S.E.2d 614, 620 (W. Va. 2006) (stating that "[n]otwithstanding the similarities in the standard used in deciding whether to set aside a default and a default judgment, . . . the standard is applied more leniently in the case of a default."). While not all courts apply an identical standard of good cause under Rule 55(c), the standards used are similar. The Second Circuit has adopted a three-part standard, balancing "whether the default was willful, whether the moving party has presented a meritorious defense, and whether setting aside the default would prejudice the party who secured the entry of default." Marziliano v. Heckler, 728 F.2d 151, 156 (2d Cir. 1984). We adopt that standard. As we held in Dougherty v. Surgen, 147 Vt. 365, 366, 516 A.2d 364, 365 (1986), "[a] motion to vacate a default judgment is addressed to the sound discretion of the trial court, and the denial of the motion will be reversed only upon a demonstration of an abuse of that discretion." The difficulty we have with the trial court decision is that it addressed only some of the factors necessary to determine whether good cause existed. The ruling did not address defendant's point that a default judgment was not a proper remedy for a defendant's failure to properly pursue arbitration. Nor did the court identify the standard for grant of such a motion.

¶ 40. With respect to the first factor, whether the default was willful, defendant's counsel alleged in his motion that his client lacked funds to initiate the arbitration and that counsel did not respond in time to the court's order because he was moving his office. He asked for more time to

prepare a more complete opposition to the motion. We recognize that conduct does not have to be in bad faith to be willful; intentional conduct is sufficient. Saunders v. Morton, 269 F.R.D. 387, 402 (D. Vt. 2010). Here, the court did not address whether the conduct was willful either based on the motion or by allowing a supplemental filing. If we concluded that the weight of this factor would determine the outcome of the motion, we would remand for analysis by the trial court. As concluded below, we find such a remand unnecessary.

¶ 41. Plaintiff made no showing of prejudice, the third factor, beyond the delay in getting the case resolved. The Second Circuit has held that delay alone or normal litigation expenses do not show prejudice. Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). Something more is needed. For example, delay " 'may thwart plaintiff's recovery or remedy. It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.' " New York v. Green, 420 F.3d 99, 110 (2d Cir. 2005) (quoting 10A C. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at 169 (3d ed. 1998)). In this case, plaintiff alleged only delay, and a main cause of delay was plaintiff's failure to initiate arbitration.

¶ 42. The main crux of this case involves the second factor, whether defendant showed a meritorious defense. We agree with the trial court that defendant is required to show more than the content of a sparse answer not submitted under oath. Green, 420 F.3d at 109-10. This is where, however, the case is unusual. As we held above, the court could not enter a default judgment on the ground that defendant failed to initiate arbitration. The remedy in such a circumstance would be to hold that defendant waived the right to arbitration under the contract. Thus, defendant had a meritorious defense to the imposition of a default judgment, although it did not identify a meritorious defense to the underlying action if the case remained in the superior court for adjudication.

¶ 43. The situation is further complicated by our conclusion, stated above, that arbitration should have been initiated by plaintiff under the terms of the contract. We have held that Vermont

18

law and public policy strongly favor arbitration as an alternative to litigation for the efficient resolution of disputes. Lamell Lumber Corp. v. Newstress Int'l, Inc., 2007 VT 83, ¶ 9, 182 Vt. 282, 938 A.2d 1215. This clearly is a case the merits of which should be resolved by arbitration rather than litigation. The applicability of arbitration is itself a meritorious defense to this litigation. See LaFrance Architect, 2013 VT 115, ¶ 22 (recognizing that arbitration could be defense to underlying action, but it was waived). It would not make sense to set aside the default for the reason defendant specified—that it was not a proper remedy for defendant's failure to initiate arbitration—and then have this case litigated on the merits.

¶ 44. We think that under these circumstances, the motion to set aside the default judgment should have been granted and plaintiff instructed to initiate arbitration or have this case dismissed rather than stayed. The trial court conclusion to the contrary does not fall within the court's discretion, understandingly because we are announcing the applicable standards for the first time.

¶ 45. This result honors our policy in favor of arbitration and our policy that cases be decided on the merits rather than by default judgment where possible, and it places the responsibility for progress in the case on plaintiff—the party who was fundamentally responsible for the delay by failing to initiate arbitration in the first instance.

Reversed and remanded for proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice