2008 VT 99

# Rathe Salvage, Inc. v. R. Brown & Sons, Inc., Robert E. Brown and Stephanie Brown

[965 A.2d 460]

No. 07-390

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 1, 2008

*Eric A. Poehlmann* and *Charlotte B. Ancel* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiff-Appellee/Cross-Appellant.

*Peter F. Langrock* and *Frank H. Langrock* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendants-Appellants/Cross-Appellees.

¶ 1. **Johnson, J.** In this action for fraud, defendants R. Brown & Sons, Robert Brown, and Stephanie Brown appeal from a default judgment on liability entered against them as a discovery sanction below. Defendants also bring several challenges to the court's final judgment on damages. Plaintiff Rathe Salvage, Inc. cross-appeals. We reverse the default judgment, remand the matter, and decline to consider the remaining issues on appeal and cross-appeal.

¶ 2. The relevant facts are as follows. For over thirty years, Rathe and R. Brown were engaged in a business relationship in which R. Brown crushed automobiles owned by Rathe, which operates a salvage yard, and hauled the scrap metal to Canadian steel mills such as Associated Steel, located outside of Montreal. By oral agreement, Rathe would telephone R. Brown to inquire about the prevailing price per ton, and if the rate was agreeable, would authorize R. Brown to come onto the premises, crush the automobiles, load them on to its truck, and haul the metal away. Rathe did not have a scale on its premises, and thus, each load that R. Brown hauled for Rathe was weighed at the respective Canadian mill that purchased the metal. After the transaction at the respective steel mill, R. Brown reported the weight to Rathe and paid Rathe accordingly. This arrangement continued until December 2003, when Rathe terminated business relations with R.

Brown because R. Brown was behind on its payments, among other problems between the parties. After terminating the relationship with R. Brown, Rathe hired a new hauling outfit to pick up the scrap automobiles on its yard and deliver them to Canadian steel mills. In dealing with the new hauling operation, Rathe noticed a significant increase in the weight of the loads from those reported in previous years by R. Brown. On average, the new loads were approximately nine tons heavier than R. Brown had reported for the loads that it had hauled for Rathe. After this discovery, Rathe contacted R. Brown's former drivers and began scrutinizing the records provided by R. Brown over the years in an effort to make sense of the discrepancy.

¶ 3. In January 2004, Rathe brought this action alleging that defendants committed fraud, breach of contract, and trespass in the course of R. Brown's business dealings with Rathe. Early in the litigation, Rathe requested from defendants copies of all documents reflecting transactions between R. Brown and Associated Steel. While defendants provided Rathe with the weigh slips in their possession, those slips were printed on R. Brown's letterhead. Rathe claimed, however, that Associated Steel typically issued its own original weigh slips for scrap metal transactions and that the original slips were dispositive to the litigation. Defendants failed to produce any Associated Steel documents, and Rathe filed a motion to compel. The court conditionally granted the motion in September 2004, ordering defendants to provide Associated Steel's documents, "subject to a confidential agreement to be produced by [defendants] and submitted to court in connection with this order." Thereafter, defendants represented to Rathe that they would not execute the court-ordered agreement until Rathe provided them with the specific documents it was seeking from Associated Steel, asserting that Rathe was not entitled to unlimited access to Associated Steel's records concerning its business relations with R. Brown. As such, defendants failed to comply with the court order, and in November 2004, Rathe filed a motion for discovery sanctions. The court held a hearing on the motion on January 13, 2005, after which it granted Rathe's motion and ordered defendant Robert Brown to sign a release form authorizing Associated Steel "to provide copies of any and all records in its possession to [Rathe's counsel] relating to transactions with R. Brown & Sons, Inc. during the year 2003, which involved scrap metal or other goods from Rathe." Despite

Associated Steel's earlier representations that it would release relevant records to Rathe's counsel with R. Brown's permission, Associated Steel refused to provide the requested documents.

¶ 4. In May 2005, Rathe deposed defendant Robert Brown. At deposition, Robert Brown was asked if he had communicated with Associated Steel since signing the release form in January. He answered that he had, stating: "I told them not to give anybody any of my records." In an effort to clarify his client's position, defense counsel stated on the record that his client did not object to Associated Steel producing the documents requested in the release form, but that he did not want any other "personal records" turned over to Rathe. Upon further questioning by defense counsel, Robert Brown testified that he had neither told Associated Steel to ignore the court-ordered release form, nor instructed them not to answer it, and that he expressed to Associated Steel that he did not want it to turn over documents with R. Brown's name on them other than those that he had consented to release by signed authorization form in court.

¶ 5. On July 28, 2005, Rathe applied for a letter rogatory from the court, pursuant to Vermont Rule of Civil Procedure 28, to assist it in compelling production of documents held by Associated Steel in Canada. Defendants responded to the application, but did not object to the letter rogatory. The court granted Rathe's request and issued a letter rogatory in August 2005, and Rathe commenced proceedings in Quebec Province. On September 15, 2005, the Quebec Superior Court issued an order and writ of subpoena duces tecum to the principal of Associated Steel, requiring him to submit to examination by Rathe's counsel and to bring with him the requested documents for Rathe's review. Associated Steel moved to strike the subpoena, and the matter was scheduled to be heard on September 28, 2005. Following the hearing on September 28, 2005, the Quebec Superior Court issued an order requiring Associated Steel's principal to appear, with relevant documents, for examination by Rathe's counsel. The following day, Associated Steel appealed the decision, which resulted in an automatic stay of the order. At some point thereafter, Rathe determined that the litigation in the Canadian courts was becoming too costly to continue and dismissed the pending appeal.

¶ 6. In January 2006, Rathe filed a motion requesting that R. Brown be held in contempt of court and, as a discovery sanction, that that the court order R. Brown to reimburse Rathe for

attorney's fees incurred in Canada in pursuit of the documents, and draw an adverse inference against R. Brown based on its actions. A hearing on the motion was held in May 2006, and on September 11, 2006, the court granted Rathe's motion, entering a default judgment on liability against defendants as a sanction for discovery violations. Furthermore, the court ordered defendants to pay the attorney's fees incurred by Rathe in the Canadian litigation against Associated Steel.

¶ 7. Defendants waived their right to a jury trial on the damages portion of the case, and a merits hearing was held on July 2, 2007. The court issued its findings of fact and conclusions of law on September, 6, 2007, finding defendants liable to Rathe in the amount of $54,885 for fraud committed in 2003, and Robert Brown liable in the amount of $38,830 for lost rent due to his failure to remove R. Brown's property from Rathe's premises and for other miscellaneous items.

¶ 8. Defendants now appeal, raising issues both related to the court's default judgment as well as the final judgment on damages. Defendants argue first that the superior court abused its discretion in issuing a default judgment against defendants as a discovery sanction. Furthermore, they contend that the court erred in awarding attorney's fees to Rathe in the Canadian litigation to which defendants were not a party. With respect to the final judgment, defendants claim that the court erred in: (1) finding damages for fraud; (2) holding defendant Stephanie Brown liable for fraud and ordering her to pay damages; (3) failing to hold a *Daubert* hearing on the admissibility of proffered polygraph evidence; (4) awarding punitive damages; and (5) awarding damages for lost rent.

¶ 9. Rathe cross-appeals, arguing that: (1) the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480n, applies to this case and Rathe was entitled to recover under the Act; (2) Rathe was entitled to attorney's fees pursuant to the Act; and (3) the court erred in basing the damages award on only one year of fraud.

¶ 10. As all other issues on appeal derive from the court's default judgment on liability, we begin by considering whether it was an appropriate discovery sanction against defendants given the facts of this case. Defendants contend that the documents requested by Rathe were neither in their possession nor their control, and that it was an abuse of discretion for the court to impose such an extreme sanction against them for the actions of

a third party, Associated Steel. Rathe counters by arguing essentially that R. Brown's close business relationship with Associated Steel gave defendants constructive control over the records in Associated Steel's possession, and furthermore, that defendants affirmatively interfered with Rathe's pursuit of the records from Associated Steel.

¶ 11. Under the rules of civil procedure, the trial court has discretion to sanction a party that "fails to obey an order to provide or permit discovery." V.R.C.P. 37(b)(2). If warranted, the court may sanction a party by "rendering a judgment by default against the disobedient party." *Id.* 37(b)(2)(C). We typically review discovery sanctions ordered by the trial court only for abuse of discretion. See *John v. Med. Ctr. Hosp. of Vt., Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978).

¶ 12. Despite trial courts' otherwise broad discretion to impose discovery sanctions, however, litigation-ending sanctions are reserved for only the most flagrant cases and are inappropriate where failure to produce discovery is due to an inability fostered by circumstances outside of the party's control. See, e.g., *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) (dismissal is a sanction of "last resort" and is an abuse of discretion if the party does not have the ability to comply with the discovery request); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) (violation of discovery order caused by inability to comply will not justify default judgment); *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970) (ultimate sanction of dismissal unwarranted where failure to comply "was due to inability fostered neither by [the party's] own conduct nor by circumstances within its control" (citation omitted)). We adopted this position in *John*, recognizing that "dismissal of an action because of a genuine inability to comply with a pretrial production order raises due process issues." 136 Vt. at 519-20, 394 A.2d at 1135. And we held that before imposing the ultimate sanction of a default judgment, the court must first find that the disobedient party acted in "bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." *Id.* at 519, 394 A.2d at 1135. In *C.C. Miller Corp. v. Ag Asset, Inc.*, we clarified that the constitutional implications of dismissing an action under Rule 37 apply with

equal force to the imposition of a default judgment as a discovery sanction. 151 Vt. 604, 607 n.*, 563 A.2d 626, 627 n.* (1989).

¶ 13. In this case, Rathe requested that defendants produce Associated Steel's original documents reflecting business transactions between R. Brown and Associated Steel. Defendants claim that it was unreasonable for the court to issue a default judgment here because defendants were unable to produce the requested documents, which remained at all times in the possession and control of Associated Steel, a third party to this litigation. To determine if defendants had the ability to produce the requested documents, and therefore acted with "willful disregard" for the court's discovery orders — such that the court's default sanction was warranted — we must first consider whether defendants had the ability to produce the requested documents.

¶ 14. Under Rule 34(a), a party may request that another party produce documents only if they "are in the *possession, custody or control* of the party upon whom the request is served." (Emphasis added.) The trial court, in its January 13, 2005 discovery order requiring Robert Brown to sign the release form, acknowledged, at least implicitly, that defendants did not have physical possession of the documents sought by Rathe, and yet, in its default judgment order, the court charged defendants with failing "to produce documents which exist and are in [their] control." Likewise, Rathe has conceded that defendants produced all relevant documents in their possession, but argues that the records are "presumptively in [R. Brown's] control" and that defendant affirmatively interfered with Rathe's pursuit of the documents from Associated Steel.

¶ 15. In *Castle v. Sherburne Corp.*, we considered whether a party could be compelled under Rule 34 to produce medical records that were not in the party's actual possession, but were in the possession of the treating hospital. 141 Vt. 157, 446 A.2d 350 (1982). We determined that the phrase "possession, custody or control" should be construed in conformance with the "policy of liberal discovery and the practical realities of the particular situation at issue." *Id.* at 166, 446 A.2d at 354 (citation omitted). As such, we held that neither actual possession nor ownership of requested documents is required; rather, the relevant inquiry is "whether the party from whom the materials are sought has the practical ability to obtain those materials." *Id.* Given the right of

a treated party to her own medical records, we determined that the party in *Castle* could be compelled to acquire the records, and at the very least, that she was required to make an effort to do so. *Id.* at 166-67, 446 A.2d at 354-55.

¶ 16. By contrast, Rathe presented no evidence at the hearing on the motion for sanctions, or otherwise, that defendants had any legal right to Associated Steel's documents or practical ability to induce the company to produce the requested documents. See *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988) (defining "control" as the legal right to obtain the requested document on demand). Nor does anything in the record suggest that R. Brown and Associated Steel had the kind of corporate relationship that would entitle defendants to Associated Steel's records. See 8A C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure § 2210, at 399-400 (2d ed. 1994) (citing cases in which corporate party was deemed to have control of records where the records were in actual possession of a parent, subsidiary, or "sister" corporation). Contrary to Rathe's assertions, the mere fact that the two entities conducted business with one another for a number of years does not suffice to establish that R. Brown in any way exerted "control" over Associated Steel's records. See V.R.C.P. 34(a). The court, however, based its default judgment order in large part on defendants' "fail[ure] to provide the records" either in response to Rathe's initial interrogatories or the September 15, 2004 order to produce Associated Steel's original documents. The court also relied on the fact that Associated Steel continued to withhold the documents even after being sent an authorization form signed by defendant Robert Brown. While defendants may have been less than fully collaborative in Rathe's pursuit of Associated Steel's weigh slips, the documents were not, as a matter of law, "in [their] control" as the court determined, and thus, defendants' failure to produce the documents could not reasonably support the court's conclusion that they "willful[ly] and deliberate[ly] disregard[ed]" the court's orders.

¶ 17. Nor did defendant Robert Brown's May 2005 deposition statement provide a sufficient basis for imposing the "drastic sanction" of a default judgment. *Manosh v. First Mountain Vt.*, 2004 VT 122, ¶ 10, 177 Vt. 616, 869 A.2d 79 (mem.). We agree with defendants that Robert Brown's deposition statement — in which he admitted telling Associated Steel not to release records with R.

Brown's name on them — was ambiguous at best. To begin, Robert Brown complied with the January 2005 order and duly signed an authorization form, consenting to the release of documents specific to R. Brown's hauling of Rathe's scrap metal in 2003. Furthermore, Robert Brown clarified at deposition that he had not interfered in any way with Associated Steel's production of the documents requested in the authorization form, but rather that he asked the company to protect any other documents related to R. Brown's business relations with the company. In any event, Rathe failed to establish that defendants had the means to induce Associated Steel to produce the requested discovery, given Associated Steel's unwillingness to release the records to Rathe even in the face of a written consent form from R. Brown, protracted litigation in the Canadian courts, and a Quebec Superior Court order compelling release of the documents.

¶ 18. We conclude that the trial court abused its discretion in sanctioning defendants by rendering a default judgment on liability against them under the circumstances of this case. Rathe in no way established that R. Brown, a Vermont-based scrap-hauling operation, had the ability to produce documents in the possession of Associated Steel, a multinational company based in Canada. As discussed above, R. Brown did not have "control" over the documents in Associated Steel's possession as required by Rule 34, nor was there sufficient evidence that R. Brown exerted the kind of influence over Associated Steel that would justify imposing liability against it for Associated Steel's actions in withholding the requested documents. Thus, we hold that it was error for the court to conclude that defendants displayed "willful and deliberate disregard" for the court's discovery orders when defendants did not have control of the documents and were therefore unable to produce them. Consequently, we reverse the court's default judgment.[*]

¶ 19. In light of our decision to reverse the court's default judgment, we likewise vacate its order requiring defendants to reimburse Rathe for attorney's fees and costs incurred in the

---

[*] We do not decide whether, or under what specific circumstances, a party opponent not legally entitled to access to documents held by another could nevertheless be subject to sanctions due to actual influence, or control in fact, over the other's failure to disclose. The record here is simply insufficient to support a finding of such influence or control.

Canadian litigation to which it was not a party. We decline, however, to address defendants' other arguments on appeal because each of those issues is predicated on the court's erroneous imposition of the default judgment on liability. Instead, we remand the case for further proceedings consistent with this opinion.

¶ 20. As a final matter, we address Rathe's cross-appeal — primarily, its assertion that the Consumer Fraud Act applies to this action. In its final ruling, the court cursorily addressed the applicability of the Consumer Fraud Act to the facts of this case. First, it noted that "it was probably not the Legislature's intent to benefit corporate plaintiffs under the scope of the Act." Then the court went on to consider whether Rathe could, in any event, qualify as a "consumer" vis-à-vis R. Brown, a prerequisite to protection under the Act. It concluded that "Rathe was a seller of goods rather than a purchaser of services," and therefore was not a consumer covered by the Act.

¶ 21. First, we respond to the court's doubts as to the applicability of the Act to businesses in general. Prior to 1997, the Consumer Fraud Act defined "consumer" as:

> any person who purchases . . . or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household.

9 V.S.A. § 2451a(a) (1997). Under the original language of the statute, it was unclear whether businesses could bring an action for consumer fraud. In 1997, however, the Legislature amended the statute, adding to its definition of "consumer":

> a person who purchases . . . or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for the use or benefit of his or her business or in connection with the operation of his or her business.

9 V.S.A. § 2451a(a). Furthermore, the bill proposing the amendment to the Act, as introduced, provided that its purpose was "to create a private cause of action for businesses under Vermont's consumer fraud statute." H.226, 1997-1998 Gen. Assem., Bien. Sess. (Vt. 1997). Thus, passage of the amendment unambiguously signaled the Legislature's intent to provide businesses with the

same protections under the Act as individuals have historically received. See *Ice Ctr. of Washington W., Inc. v. Town of Waterbury*, 2008 VT 37, ¶ 7, 183 Vt. 616, 950 A.2d 464 (mem.) (our primary objective in construing a statute is to effectuate the Legislature's intent and where the language of the statute is unambiguous, we enforce it according to its terms). In answer to the trial court's uncertainty, we hold unequivocally that business entities are entitled to the same rights under the Act as other consumers. Cf. *Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 275 (D. Vt. 2003) (holding that Vermont's Consumer Fraud Act applies to businesses).

¶ 22. Despite its ambivalence about the applicability of the statute to businesses, the court concluded that vis-à-vis R. Brown, Rathe was a seller of goods and was consequently excluded from the protections of the Act in any event. In reaching its decision, the court acknowledged that the parties had not focused on the question at the hearing on damages, stating that "the precise nature of the Rathe/[R. Brown] contract ha[d] not been analyzed by counsel." Given that we have determined that the Act applies to businesses in general and are remanding for a hearing on the merits, the parties should be allowed a full opportunity to present evidence related to the question of whether Rathe qualifies as a "consumer" under the specific facts of this case at trial.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*