NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 33

No. 23-AP-274

| | |
|---|---|
| RSD Leasing, Inc. | Original Jurisdiction |
| v. | Federal Certified Question |
| Navistar International Corporation and Navistar, Inc. | March Term, 2024 |

Michael F. Hanley and Paul J. Perkins of Plante & Hanley, P.C., White River Junction, for Plaintiff-Appellant.

Richard Windish of Primmer Piper Eggleston & Cramer, Woodstock, and Clayton J. Callen and Trevor W. Carolan of Bowman and Brooke, LLP, Austin, Texas, and Plano, Texas, for Defendants-Appellees Navistar International Corporation and Navistar, Inc.

Thomas C. Nuovo of Bauer Gravel Farnham, LLP, Colchester, for Amicus Curiae Vermont Association for Justice.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** In this federal diversity action, plaintiff RSD Leasing, Inc. alleges that defendants Navistar International Corp. and Navistar, Inc. violated the Vermont Consumer Protection Act (VCPA) by selling trucks with faulty emission-control systems. Defendants counter that plaintiff is not a "consumer" under the VCPA and is therefore barred from recovery. We accepted review of the following question certified from the U.S. Court of Appeals for the Second Circuit: "Does a business that purchases goods intending first to lease those goods to end users and then to resell them at the termination of the lease term qualify as a 'consumer' under the VCPA?" We conclude that plaintiff is not a consumer under the facts presented here and therefore answer the certified question in the negative.

¶ 2.     The following facts are drawn from the record and are not in dispute for purposes of this appeal.  Plaintiff is a Vermont-based corporation that leases trucks to commercial operators.  Between 2008 and 2014, plaintiff purchased forty trucks manufactured by defendants from a nonparty dealer.[1]  These trucks constituted most of plaintiff's fleet.  The trucks were equipped with an emission-control system known as an exhaust gas recirculation system.  According to plaintiff, defendants promised that the trucks would provide lower operating costs, better fuel efficiency, more power, and greater reliability than trucks equipped with other types of emission-control systems.  Instead, the exhaust gas recirculation system caused the trucks to lose power, break down, and damage other engine components.

¶ 3.     Plaintiff leased the trucks to other entities for four-to-six-year terms.  Throughout the lease terms, plaintiff paid the loan for each truck; periodically renewed each truck's registration; paid for inspections; paid taxes and claimed depreciation tax credits on each truck; replaced broken-down trucks; maintained the trucks; and did not transfer title to the customer.  Each lease agreement contained the option for the customer to purchase the truck at the end of the term.  Approximately half of the trucks were sold at the end of their lease terms.  Of the remaining trucks, two remained in plaintiff's fleet for occasional short-term rental and the rest were to be sold for parts or hauled to a junkyard.  Plaintiff would have preferred to use more of the remaining trucks in its rental fleet, but they proved to be too unreliable.

¶ 4.     It is undisputed that plaintiff's intent at the time it purchased the trucks was to lease them out and, after each lease term expired, sell them.  It is also undisputed that plaintiff did not purchase the trucks to transport goods or people for itself or other clients, and that plaintiff was a registered dealer of used vehicles in Vermont.

---

[1]     Although plaintiff did not purchase the trucks directly from defendants, defendants concede that this does not affect the viability of plaintiff's VCPA claim.  See Elkins v. Microsoft Corp., 174 Vt. 328, 331, 817 A.2d 9, 13 (2002) (holding that plain language of VCPA "does not support the imposition of a privity requirement").

¶ 5.    In 2015, plaintiff filed a complaint against defendants in the U.S. District Court for the District of Vermont, alleging breach of express and implied warranties, detrimental reliance, negligent misrepresentation, fraudulent concealment, and violation of the VCPA.  Defendants eventually moved for summary judgment on the negligent-misrepresentation, fraudulent-concealment, and VCPA claims.  In December 2021, the district court denied the motion on the former two claims but granted summary judgment on the VCPA claim.  The court reasoned that plaintiff did not qualify as a consumer under the VCPA because it purchased the trucks for resale in the ordinary course of its business.  The parties subsequently agreed to dismiss all remaining claims so that plaintiff could appeal the district court's ruling.  Plaintiff then appealed to the Second Circuit, which certified the question of whether plaintiff qualified as a consumer under the VCPA to this Court.

¶ 6.    The VCPA, formerly known as the Consumer Fraud Act, prohibits unfair methods of competition and unfair or deceptive acts or practices in commerce.  9 V.S.A. § 2453(a).  The VCPA's purpose is "to protect this state's citizens from unfair and deceptive business practices and to encourage a commercial environment highlighted by integrity and fairness."  Gramatan Home Invs. Corp. v. Starling, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983).

¶ 7.    A person seeking to recover damages through a private action under the VCPA must prove that they are a "consumer."  Id.; 9 V.S.A. § 2461(b) (providing private right of action to "any consumer" who contracts for goods or services in reliance on false or fraudulent representations or practices or who sustains damages as result of such representations or practices).  The VCPA presently defines a consumer as follows:

> "Consumer" means any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of the person's trade or business but for the person's use or benefit or the use or benefit of a member of the person's household, or in connection with the operation of the person's household or a farm whether or not the farm is conducted as a trade or business, or a person who purchases, leases, contracts

3

> for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of the person's trade or business but for the use or benefit of the person's business or in connection with the operation of the person's business.

9 V.S.A. § 2451a(1) (emphasis added). We have interpreted the underlined clause above, which was added by the Legislature in 1997, to give businesses the same rights as other consumers under the VCPA. Rathe Salvage, Inc. v. R. Brown & Sons, Inc., 2008 VT 99, ¶ 21, 184 Vt. 355, 965 A.2d 460.

¶ 8. Plaintiff argues that a business that purchases goods with the intent to lease those goods and then resell them afterward does not purchase the goods for resale in the ordinary course of its trade or business, and therefore qualifies as a consumer under the VCPA. "We address this argument de novo because the issues it raises are strictly matters of law." Foti Fuels, Inc. v. Kurrle Corp., 2013 VT 111, ¶ 10, 195 Vt. 524, 90 A.3d 885.

¶ 9. In interpreting the statutory definition of a consumer, our primary goal is to determine the intent of the Legislature. Gallipo v. City of Rutland, 173 Vt. 223, 235, 789 A.2d 942, 951 (2001). We presume that the Legislature "intended the plain, ordinary meaning of the adopted statutory language," and will apply the statute as written if its meaning is unambiguous. Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350. Where there is ambiguity, however, "we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law." Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (quotation omitted). The legislative history of a statute, the circumstances of its adoption, and the legislative policy behind the statute may be helpful in determining the Legislature's intent. Id. We are also mindful that the VCPA is a remedial statute that "must be construed liberally so as to furnish all the remedy and all the purposes intended." Elkins v. Microsoft Corp., 174 Vt. 328, 331, 817 A.2d 9, 13 (2002) (quotation omitted). "Of

course, liberal construction does not allow us to stretch the language beyond legislative intent." Id.

¶ 10. A business is a consumer under the VCPA if it purchases goods or services "not for resale in the ordinary course of [its] trade or business but for the use or benefit of [its] business or in connection with the operation of [its] business." 9 V.S.A. § 2451a(1). Stated another way, the VCPA "countenances a lawsuit brought by a corporation that purchased goods or services for the use or benefit of the business or in connection with the operation of the business, as long as the goods or services were not purchased for resale in the ordinary course of the business." Ascension Tech. Corp. v. McDonald Invs., Inc., 327 F. Supp. 2d 271, 276 (D. Vt. 2003).

¶ 11. As the Second Circuit observed, the statute does not define the terms "use," "benefit," or "in connection with the operation of." RSD Leasing, Inc. v. Navistar Int'l Corp., 81 F.4th 153, 160 (2d Cir. 2023). It is therefore unclear whether a business's lease of purchased goods to third parties is "for the use or benefit of the . . . business or in connection with the operation of the . . . business." 9 V.S.A. § 2451a(1). Plaintiff asserts without analysis that it qualifies as a consumer under this portion of the definition because it benefited from the revenue that leasing the trucks provided and the trucks were central to the operation of its business of leasing trucks. Defendant counters that the VCPA was not intended to apply to commercial lessors like plaintiff because they did not act as consumers with respect to the goods purchased and instead leased them to the real end users. We conclude that it is unnecessary to determine whether the lease of purchased goods may constitute use, benefit, or operation within the meaning of the statute because even assuming that it does, the facts here demonstrate that plaintiff purchased the goods for resale in the ordinary course of its business and is therefore excluded from the definition of consumer under 9 V.S.A. § 2451a(1).

¶ 12. The phrase excluding resale transactions appears twice in § 2451a(1): in the first clause, which applies to individuals, and in the later-added second clause, which applies to

5

businesses. We considered the former in Poulin v. Ford Motor Co., 147 Vt. 120, 513 A.2d 1168 (1986), an appeal from a jury verdict awarding damages under the VCPA to the plaintiff, who purchased a 1979 Ford Mustang "pace car" based on promises that it was a limited edition and therefore would increase in value as a collector's item. The defendant argued that the plaintiff was not a consumer under the VCPA because he purchased the car as an investment and testified that he bought and sold cars. Id. At 123, 513 A.2d at 1171. We explained that the "[p]laintiff's expectation that the car would appreciate in value does not prohibit him from being a consumer." Id. Rather, the question was "whether the plaintiff bought the car to resell in the ordinary course of his business." Id. We concluded that the jury could find that the plaintiff was a consumer because he "testified that he bought the car for his personal benefit and that although he had sold cars bought as investments, he was not a used car dealer." Id.

¶ 13.   Poulin makes clear that in determining whether a plaintiff is a consumer, we must examine the plaintiff's intent at the time of purchase as well as the nature of the plaintiff's business. In this case, it is undisputed that plaintiff was in the business of leasing and selling trucks. As the federal district court noted, "[t]he trucks are RSD's inventory." RSD Leasing, Inc. v. Navistar Int'l Corp., No. 5:15-CV-205, 2021 WL 6802994, at *3 (D. Vt. Dec. 8, 2021). At the time plaintiff purchased the trucks, it planned to lease them for four-to-six-year terms and then resell them.[2] The situation here is therefore substantially different from Poulin, where the purchaser was an individual who had occasionally resold similar goods in the past and thought he might resell the car at some undetermined later date. See RSD Leasing, 81 F.4th at 168 (noting factual distinction). Resale was not a mere possibility; it was a central feature of plaintiff's business model that the trucks would be resold upon termination of the lease, and this was known at the time of purchase. As plaintiff's president testified in his deposition, at the end of the lease term, "our goal is to sell."

---

[2] Because the focus is properly on plaintiff's intent at the time of purchase, it is irrelevant that plaintiff was ultimately only able to resell about half of the trucks.

6

Under these circumstances, we conclude that the trucks were purchased for resale in the ordinary course of plaintiff's business.[3]

¶ 14.    Our interpretation of the resale exclusion is consistent with decisions from Illinois, which appears to be the only other state with a similar statutory definition of "consumer" in its consumer fraud act.[4]  See 815 Ill. Comp. Stat. Ann. 505/1 (defining consumer to mean "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household").  Courts applying Illinois law have looked to the purchaser's intent and whether the goods were resold in the course of the purchaser's business to determine whether a plaintiff is a consumer.  See Bledsoe v. FCA US LLC, 663 F. Supp. 3d 753, 790 (E.D. Mich. 2023) (holding that plaintiff who purchased truck for his snowplowing business was consumer under Illinois law because truck was used for personal and business purposes and no evidence that plaintiff intended to resell truck in ordinary course of

---

[3]  Unlike the buyer in Poulin, plaintiff is a registered used car dealer in Vermont.  Plaintiff's president asserted in an affidavit submitted in opposition to summary judgment that plaintiff registered as a dealer in order to obtain dealer plates, which were used to drive cars kept in his brother's private collection and never for the trucks at issue in this litigation.  Because the significance of plaintiff's status as a dealer is unclear, we do not rely on it in reaching our conclusion.

[4]  The dissent asserts that cases interpreting the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) are unhelpful because on its face, the ICFA applies only to purchases for personal use.  However, Illinois courts have made clear that "[a] corporation may be a 'consumer' under the ICFA" if it purchases goods or services for its own use.  Tile Unlimited, Inc. v. Blanke Corp., 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011).  The dissent instead relies heavily on decisions interpreting the federal Magnuson-Moss Warranty Act to support its view that a purchase of a vehicle for leasing does not qualify as a purchase for resale.  Post, ¶¶ 25-26.  However, this is by no means a settled interpretation of that Act; there are several decisions from other jurisdictions that reach the opposite conclusion.  See, e.g., Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 523 (7th Cir. 2003) (holding that lessor did not qualify as consumer under Magnuson-Moss Warranty Act because "whenever a lessor takes title to a car, at least one of its purposes is, presumably, the actual resale of the vehicle"); DiCintio v. DaimlerChrysler Corp., 768 N.E.2d 1121, 1127 (N.Y. 2002) (reaching similar conclusion); see also Parrot v. DaimlerChrysler Corp., 130 P.3d 530, 534 (Ariz. 2006) (reaching similar conclusion).  We conclude that the latter are more persuasive.

7

business); <u>Tile Unlimited</u>, 788 F. Supp. 2d at 739 (holding tile installer that purchased underlayment product and used it to install ceramic tile in homes and businesses was not consumer because it resold product to customers); <u>First Magnus Fin. Corp. v. Dobrowski</u>, 387 F. Supp. 2d 786, 794 (N.D. Ill. 2005) (explaining that "where a corporation makes a purchase for future resale, it is not a consumer"); <u>Brown v. Veile</u>, 555 N.E.2d 1227, 1231 (Ill. App. Ct. 1990) (holding that dealers in pre-owned mobile homes were not consumers because they purchased and offered homes for resale in ordinary course of their trade or business).

¶ 15.  Our conclusion does not mean, as plaintiff and amicus curiae suggest, that the VCPA applies only to businesses who intend to keep their purchased goods forever.  Whether the resale exclusionary clause applies will depend on several factors, including the business's intent upon purchase, the certainty that resale will occur at a given time, and whether the resale of the specific goods is central to the purchaser's business model.  Thus—to use the example provided by plaintiff—an inn that purchases televisions for use by its guests and eventually resells them to recoup some value once they are out of date or no longer needed could still qualify as a consumer if its principal intent in making the purchase was to use the televisions in the inn, the possibility of resale was indeterminate, and the inn was mainly in the business of providing lodging for guests, not selling televisions.  See, e.g., <u>In re Aggrenox Antitrust Litig.</u>, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016) (holding that health insurance company "may be able to sue under the [VCPA] in connection with computers or office equipment of which [it] is a business consumer," but did not qualify as consumer of drugs used by its members for which it provided reimbursement); <u>One Source Env't, LLC v. M + W Zander, Inc.</u>, No. 2:12-CV-145, 2015 WL 7737991, at *2 (D. Vt. Dec. 1, 2015) (holding that business could potentially qualify as consumer of filter fan units that it intended to keep for use for weekly rental and for manufacturing in its own facility).  Here, in contrast, plaintiff intended to lease the trucks for a specific time period

and then resell them, it had an anticipated timeframe for the resale, and its primary business was dealing in trucks. It is therefore not a consumer under the VCPA.[5]

¶ 16. Plaintiff argues that this conclusion is inconsistent with the remedial purpose of the statute. We disagree. Notably, for the first thirty years of its existence, the VCPA did not apply to non-farm businesses at all. See State v. Int'l Collection Serv., Inc., 156 Vt. 540, 543, 594 A.2d 426, 428 (1991) ("Based on the definition of 'consumer,' see 9 V.S.A. § 2451a(a), it is clear that there is no private right of action under § 2461(b) for business victims of deceptive or unfair acts or practices."); 1973, No. 221 (Adj. Sess.), § 3 (defining consumer as "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his trade or business but for his use or benefit or the use or benefit of a member of his household or in connection with the operation of his household or a farm whether or not the farm is conducted as a trade or business"). We have explained that the omission was likely the result of a legislative determination that "business persons have adequate private remedies in existing laws, while special, new remedies are necessary to protect individual consumers." Int'l Collection Serv., Inc., 156 Vt. at 543-44, 594 A.2d at 429.

¶ 17. In 1997, the Legislature expanded the VCPA's protection to businesses by adding the provision at issue here, which repeats the "not for resale" exclusion that was in the original version of the act. 1997, No. 42, § 1. The exclusion of businesses engaged in resale transactions reflects a continuing legislative determination that existing laws, such as the Uniform Commercial Code, provide adequate remedies for business-to-business disputes arising from sales of goods.

---

[5] Amicus curiae argues that our conclusion will mean that any individual who purchases a vehicle with the intent to sell it after a certain number of years forfeits protection under the VCPA. This argument ignores the other part of the exclusionary clause, which requires the resale to be in the ordinary course of the person's trade or business. 9 V.S.A. § 2451a(1). Individuals who purchase vehicles for personal use and are not themselves car dealers can be consumers even if they intend to resell. Poulin, 147 Vt. at 123, 513 A.2d at 1171.

9

See id.; 9A V.S.A. §§ 2-101 to 2-725. This dispute falls within that category of excluded transactions. The remedial nature of the statute "does not warrant an interpretation which is not justified by its clear and express language." Marden v. Walton, 142 Vt. 204, 207, 455 A.2d 321, 322 (1982).

¶ 18. The limited legislative history of the amendment further supports our conclusion that it was not intended to provide a remedy for a business in plaintiff's situation. At a hearing on the proposed amendment before the Senate Committee on Economic Development, Housing and General Affairs, co-sponsor of the House bill Representative Ann Hallowell testified that:

> [The amendment to § 2451a(1)] merely expands a portion of this statute to address the issue of—the issue of fraud when it comes to small businesses. This is often found in cases where people are promised certain services over the phone to enhance their business. This has nothing to do with the final output of the business. It has everything to do with making services within the business itself behave more efficiently.

Consumer Fraud: Hearing on H. 0226 Before the Senate Comm. On Econ. Dev., Hous. & Gen. Affairs, 1997-1998 Bien. Sess. (Vt. Apr. 22, 1997) (statement of Rep. Ann Hallowell) (emphasis added.). Julie Brill, an attorney from the Consumer Protection Unit of the Vermont Attorney General's Office, testified similarly before the Committee that the amendment was a "definitional change [that] will allow small businesses who are victimized when they purchase something that is not going to be resold in their business, but they purchase something for their own use in their business, they can bring a consumer fraud act [claim]." Id. (Statement of Julie Brill, Vermont Attorney General's Office, Consumer Protection Unit). Though sparse, this legislative history indicates that the intent of the amendment was to extend the protections of the VCPA to business purchasers of goods that they used as consumers, but not to purchasers of inventory to be resold. Our determination that the resale exclusion applies to plaintiff is therefore consistent with the

statutory language and purpose of the 1997 amendment.[6]  We conclude that the answer to the question certified by the Second Circuit, under these factual circumstances, is "no."

For the reasons discussed herein, we answer the certified question in the negative.


FOR THE COURT:


_____
Associate Justice


¶ 19.  **REIBER, C.J., dissenting.**  The certified question asks whether "a business that purchases goods intending first to lease those goods to end users and then to resell them at the termination of the lease term" qualifies as a consumer under the Vermont Consumer Protection Act (VCPA).  This question is best answered by looking to the primary purpose of the purchase; in other words, whether the purchaser bought the goods "for resale" or whether it bought them "for the use or benefit" of its business.  Because plaintiff's primary purpose for the purchase was to lease the trucks, and the eventual resale was merely incidental to this goal, plaintiff qualifies as a consumer with respect to these purchases.  In concluding otherwise, the majority conflates the meaning of lease and resale in a manner contrary to the VCPA's text and its remedial purpose.  Accordingly, I respectfully dissent.

¶ 20.  As the Second Circuit framed it, the certified question consists of four constituent parts: (1) whether a lease is itself a resale under the VCPA; (2) whether leasing a purchased good to a third-party qualifies as being "for the use or benefit of the person's business or in connection

_____

[6]  Plaintiff correctly notes that "testimony and statements of legislative witnesses and individual legislators . . . , standing alone, have never been regarded as sufficiently compelling to justify deviation from the plain language of a statute." Vt. Dev. Credit Corp. v. Kitchel, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (quotation omitted).  Here, however, the quoted testimony is consistent with the plain language of the statute, which limits the VCPA's protection to businesses who purchase goods to use as consumers rather than for resale.

with the operation of" that business; (3) whether a purchaser who intends to eventually resell the good has purchased it "for resale"; and (4) how to treat a purchase that is both "for the use or benefit of the person's business" and "for resale." While the majority does not address the first two questions, I begin with a brief discussion of those issues.

¶ 21. First, a lease does not qualify as a resale under the VCPA because the statute does not use the terms interchangeably and because the terms have distinct colloquial and legal definitions. In seeking to effectuate the intent of the Legislature, "[w]e start with the plain language of the statute, and if the plain language is clear, we enforce the statute according to its terms." State v. Boyajian, 2022 VT 13, ¶ 16, 216 Vt. 288, 278 A.3d 994. The VCPA separately defines the terms "seller" and "lessor," based on whether the person is "engaged in a business of selling goods" or "leasing goods" to consumers. 9 V.S.A. § 2451a(3), (7). In defining "consumer," the Act refers only to purchases "for resale," not those for lease. Id. § 2451a(1). If the Legislature intended to also exclude purchases for lease, it would have said so. Cf. id. § 2451a(4) (defining "[h]ome solicitation sale" to mean "the sale or lease" of goods or services at consumer's residence or place of business). Although the VCPA does not define resale, sale, or lease, "[w]e have consistently held that words in a statute which have not been specifically defined should be accorded their plain and commonly accepted meaning." Carter v. Gugliuzzi, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998). According to its plain meaning, a resale is simply a type of sale in which the good being sold was "previously purchased from a manufacturer or wholesaler." Resale, Black's Law Dictionary (11th ed. 2019). "Sale" is in turn commonly understood to mean "[t]he transfer of property or title for a price." Id.; see also 9A V.S.A. § 2-106(1) (defining "sale" in UCC as a transaction that results in "the passing of title from the seller to the buyer for a price"). In contrast, "lease" is commonly defined as a conveyance of "the right to use and occupy the property in exchange for consideration." Lease, Black's Law Dictionary, supra. Thus, leases are distinct from sales—and by extension, from resales—in that a lease conveys only a right to use the

12

good for a certain period of time, not the ownership or title of that good. Because leases and resales are plainly distinct and because the Legislature chose to exclude only purchases "for resale" from the definition of consumer, the Legislature did not exclude purchases for lease.

¶ 22.   Second, plaintiff's transactions qualify as being for the "benefit" of its business. The VCPA defines a consumer as one who purchases goods or services "not for resale in the ordinary course of the person's trade or business but for" any of three purposes: (1) the "use" of the person's business; (2) the "benefit" of the person's business; or (3) "in connection with the operation of the person's business." 9 V.S.A. § 2451a(1). At a minimum, it should be uncontroversial that the purchase of a truck by a truck-leasing business for the purpose of leasing the truck for profit is for the "benefit" of that business. Black's Law Dictionary defines "benefit" as "advantage," "privilege," or "[p]rofit or gain." Benefit, Black's Law Dictionary, supra. It is undisputed that plaintiff generated profits through the leasing of trucks—that is, that the leases provided plaintiff with a "profit or gain." Given this fact, it is absurd to say that plaintiff did not purchase the trucks "for . . . the benefit of [its] business." 9 V.S.A. § 2451a(1). If leasing the trucks did not provide a benefit to plaintiff's business, plaintiff would not have purchased them. Because a purchase can qualify under any one of the "use/benefit/operation" provisions, it is not necessary to decide whether the other provisions apply.

¶ 23.   With these premises established, I turn now to the crux of the matter: whether plaintiff's admitted intent to resell the purchased trucks after several years of leasing excludes plaintiff from the VCPA's definition of consumer. It does not. The statute is best read to exclude purchasers from the definition of consumer only where resale of the purchased good is the primary purpose of the underlying purchase—that is, where the purchase was "for resale." Where, as here, the purchase is primarily for the use or benefit of the business rather than for resale, the purchaser qualifies as a consumer.

¶ 24. The VCPA is a remedial statute "and as such we apply the Act liberally to accomplish its purposes." Carter, 168 Vt. at 52, 716 A.2d at 21. We have previously recognized that the "purpose of the [VCPA] is to 'protect the public' against 'unfair or deceptive acts or practices,' " id. (quoting 9 V.S.A. § 2451), and that the purpose of the 1997 amendment to the VCPA was "to provide businesses with the same protections under the Act as individuals have historically received." Rathe Salvage, Inc. v. R. Brown & Sons, Inc., 2008 VT 99, ¶ 21, 184 Vt. 355, 965 A.2d 460. Furthermore, "[w]here remedial legislation contains an express limitation, we have generally declined to expand the exception beyond its plain terms." Carter, 168 Vt. at 53, 716 A.2d at 21; see also Human Rights Comm'n v. LaBrie, Inc., 164 Vt. 237, 245, 668 A.2d 659, 665 (1995) (noting in context of Fair Housing and Public Accommodations Act that because "FHPA is a remedial statute . . . we construe it generously and read exemptions narrowly").

¶ 25. In interpreting the VCPA's "not for resale" clause, I would look to how courts have interpreted the similar language of the Federal Magnuson-Moss Warranty Act, which defines "consumer," in relevant part, as "a buyer (other than for purposes of resale) of any consumer product." 15 U.S.C. § 2301(3). Although the definition is not identical to the one in the VCPA, the Federal Act provides a useful comparison given that it requires determining whether a given purchase was for the purpose of resale and it does not exclude from this inquiry transactions that were for purposes other than personal use.[7] Reliance on interpretations of federal consumer protection law is also consistent with the VCPA's purpose to "complement the enforcement of

---

[7] For the same reason, the majority's citations to the Illinois Consumer Fraud and Deceptive Business Practices Act are not persuasive. The Illinois Act defines consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. Ann. 505/1 (emphasis added). Thus, the Illinois Act applies only to purchases for personal use. Unlike the VCPA then, the Illinois Act cannot apply to purchases that are merely for the benefit of the purchaser's business, such as purchases for leasing to third parties.

federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices." 9 V.S.A. § 2451.

¶ 26. Most courts that have considered the issue have concluded that the leasing of a purchased vehicle does not qualify as being for purposes of resale under the Federal Act. See Cohen v. AM Gen. Corp., 264 F. Supp. 2d 616, 620 (N.D. Ill. 2003) (concluding that sale to leasing business was not for resale because "[a]ny resale of the vehicle would take place only after plaintiffs had used a considerable percentage of the vehicle's value"); Dekelaita v. Nissan Motor Corp. in USA, 799 N.E.2d 367, 375 (Ill. App. Ct. 2003) (holding that purchase was not for resale because contrary ruling would mean that "few buyers could ever enforce the Act" since "most automobile purchasers buy a car with the ultimate goal of resale"); Peterson v. Volkswagen of Am., Inc., 2005 WI 61, ¶ 35, 697 N.W.2d 61 (holding that purpose of transaction between a leasing company and a seller was "not for resale, but for the lease of the vehicle to plaintiff" (quotation omitted)); Ryan v. Am. Honda Motor Corp., 869 A.2d 945, 952 (N.J. Super. Ct. App. Div. 2005) (" 'Resale' of the vehicle at the end of the lease may be likely, but it is collateral to, and hardly the primary purpose of, the original transaction."); Mago v. Mercedes-Benz, U.S.A., Inc., 142 P.3d 712, 718 (Ariz. Ct. App. 2006) (concluding that contrary ruling "would lead to an absurd result" by excluding many ordinary consumer purchases). But see DiCintio v. Daimler Chrysler Corp., 768 N.E.2d 1121, 1127 (N.Y. 2002) (concluding that purchase was for resale because "ultimate resale is presumably an intrinsic part of its plan when it takes title to the vehicle").

¶ 27. Applying the same logic, the VCPA does not exclude transactions where there is any future intent to resell since such an interpretation would lead to the exclusion of many quintessential consumer transactions. Many, if not most, purchasers of vehicles intend to eventually resell the vehicle sometime down the line. Interpreting the statute to exclude such transactions undermines the VCPA's purpose of protecting the public against unfair business practices and runs counter to our rule against expansively interpreting exclusionary provisions in

15

remedial legislation. See 9 V.S.A. § 2451; Carter, 168 Vt. at 53, 716 A.2d at 21 (declining to expand "media" exception under VCPA because doing so "would plainly undermine the Act's remedial purpose, and contravene our stated policy to construe the statute liberally"); see also Ryan, 869 A.2d at 952 (declining to expansively interpret resale exception of Magnuson-Moss Act because doing so "does not accord with the underlying purpose of the Act"). It is also inconsistent with our holding in Poulin v. Ford Motor Co., where we concluded that a person who purchased a limited-edition vehicle with the expectation that it would appreciate in value and the intent of possibly reselling the vehicle in the future was still a consumer because "he bought the car for his personal benefit." 147 Vt. 120, 123, 513 A.2d 1168, 1171 (1986). Although Poulin involved an individual, rather than a business, this distinction is immaterial since we have previously held "unequivocally that business entities are entitled to the same rights under the Act as other consumers." Rathe Salvage, 2008 VT 99, ¶ 21.

¶ 28. Recognizing our holding in Poulin, the majority agrees that the "not for resale" clause does not operate as a complete bar on any intent to resell goods in the future. From this premise, the majority suggests that the appropriate test for whether the clause applies is a multi-factor balancing test, looking at "the business' intent upon purchase, the certainty that resale will occur at a given time, and whether the resale of the specific goods is central to the purchaser's business model." Ante, ¶ 15. I agree that these factors are relevant to the inquiry, but they somewhat beg the question, while providing little guidance to courts in other factual circumstances.

¶ 29. In my view, the proper test to evaluate whether a purchaser qualifies as a consumer under the VCPA is to look to the primary purpose of the underlying transaction. I base this conclusion on two aspects of 9 V.S.A. § 2451a(1). First, the statute's use of the word "for" connotes purpose, requiring an inquiry into the reason behind the purchase of the good—what the purchase was "for." See Webster's New Collegiate Dictionary 444 (1981) (defining "for" as "a

function word to indicate purpose"). Second, the "for resale" and "for the use or benefit" clauses are mutually exclusive, such that the purchase can only be "for" one of the two purposes. The statute defines consumer as one who purchases a good or service "not for" resale "but for" their own use or benefit. The "not for" and "but for" language means that the purchase must be either "for" resale or "for" the business' use or benefit, not both. Because the statute requires an examination of the purchaser's purpose, because the "not for resale" clause does not operate as a complete bar on any intent to resell, and because the statute permits a finding of only one purpose, where two purposes arguably exist, we must compare those purposes to determine which one is the reason "for" which the purchaser made the purchase. Notably, this approach is consistent with that proposed by defendant, who suggests that we should look to whether the resale of the good is the "central crux of the purchase transaction," and by several courts in interpreting the Magnuson-Moss Act. See Ryan, 869 A.2d at 952 (declining to exclude purchase for lease from definition of consumer because resale was "hardly the primary purpose of[] the original transaction"); Cohen, 264 F. Supp. 2d at 620 (noting argument that lessor's "primary purpose in buying the car was to facilitate the lease" and concluding that "[t]he Act requires us to look for the reason that the vehicle was purchased, and the reason was the subsequent lease to plaintiffs, not resale").

¶ 30. The circumstances here demonstrate that plaintiff's primary purpose in making the purchases was to lease the trucks, not to resell them. Plaintiff's core business is as a leasing company, not a used vehicle dealer. Its very name, "RSD Leasing, Inc.," indicates that its primary business is the leasing of trucks. As plaintiff's leasing business has dwindled—allegedly as a result of faulty trucks sold by defendant—it has stopped purchasing trucks and the number of trucks it owns has diminished from more than eighty to around fifty. If plaintiff's purpose for purchasing the trucks were resale, the success of its leasing business would have little effect on its truck purchases.

17

¶ 31.    While plaintiff does eventually attempt to resell its trucks, it does so only after having extracted much of the vehicles' value through the end-customers' use of the trucks during the lease period.  As plaintiff's president testified at deposition, plaintiff generally estimates a resale value of "23 percent of purchase price."  Thus, in the course of the lease, the vehicle is expected to depreciate in value by more than three-fourths.  See Cohen, 264 F. Supp. 2d at 620 (concluding that lessor's purpose in purchasing vehicle was leasing, not resale, since "[a]ny resale of the vehicle would take place only after plaintiffs had used a considerable percentage of the vehicle's value").    Furthermore, under its leasing contracts, plaintiff is responsible for maintenance, registration, inspection, taxes, and replacement of broken-down trucks.  And because it finances purchase of the trucks, plaintiff is also responsible for making periodic loan payments. Given all of these costs, to make a profit on any individual truck, plaintiff must recoup significantly more than the expected three-quarters' depreciation of the truck's value during the four-to-six-year lease contracts.  We can therefore assume that more than three-quarters of plaintiff's revenue, and likely far more, comes from the leasing business, compared to less than one-quarter from resales. The resales therefore operate not as a primary source of plaintiff's revenues, but rather as a way to recoup some costs to support the continued purchase of trucks for plaintiff's principal business of leasing.  For all of these reasons—the nature of plaintiff's business, the evidence that purchases have dwindled in lockstep with the leasing business, the fact that most of the trucks' value is used up during the leasing period, and the fact that a large majority of plaintiff's profits come from leasing rather than resale—I would conclude that plaintiff's purchase of the trucks was "for the use or benefit" of its business and not "for resale."

¶ 32.    In concluding otherwise, the majority states without any discussion of the facts that plaintiff's "primary business was dealing in trucks."  Ante, ¶ 15.  But this cursory statement elides the distinction between leasing and selling, in contravention of the statute and the plain meaning of these terms.  See supra, ¶ 21.  Plaintiff's primary business is leasing trucks, not selling them.

18

The majority makes no attempt to argue otherwise. Only by combining the leasing with the eventual resale does the majority reach its conclusion. But the statute does not authorize this; it excludes only purchases that are "for resale," not those for other purposes, such as leasing.

¶ 33. Eliding the distinction between eventual resale and the substance of the business' activities leads to absurd results in other circumstances. For example, imagine a trucking company that provides trucking services to customers, purchases trucks for use in its business, and resells them on a relatively fixed schedule when they reach a certain mileage. Such a business is engaged in providing trucking services, not "dealing in trucks," and its purchase of the trucks should be evaluated in this context. Or imagine a cloud-computing company that purchases servers and sells remote data storage to consumers, but regularly resells the servers to third parties as they degrade. Again, such a company's primary business is providing data-storage services, not "dealing in servers." The same is true here; plaintiff provides leasing services, which are a distinct business from sales. The VCPA does not distinguish among types of businesses; provided a purchase is not "for resale," the VCPA allows a purchaser to qualify as a consumer for any purchase that was for the benefit of its business, regardless of the nature of that business. Notwithstanding the facial similarities between leasing and reselling, under the terms of the VCPA, the business of leasing is as distinct from reselling as are trucking or data-storage services.

¶ 34. Moreover, the distinct nature of leases demonstrates why lessors are deserving of the VCPA's protections and why the Legislature chose to exclude only resales from the definition of consumer. Whereas resellers seek to maximize profits by selling goods as quickly as possible, lessors derive their profits from monthly lease payments, and therefore benefit from holding onto goods for as long as possible. Because lessors retain title of the goods for a significant period of time, they are more likely to be personally affected by the deceptive or unfair business practices of sellers, and therefore to need the protection of the VCPA. Protecting lessors and not resellers also makes intuitive sense because lessors—particularly lessors of expensive machinery, such as

19

trucks—provide a vital service to end-consumers that resellers do not. Plaintiff's own business demonstrates the importance of this service; plaintiff's customers gain access to trucks while avoiding the up-front cost of purchase, the risk of purchasing faulty trucks, the need to maintain the trucks, the associated fluctuations in monthly costs, the administrative burden of registering, inspecting, and paying taxes on the trucks, and the logistical difficulty of disposing of the trucks at the end of their useful life. Plaintiff, as lessor, bears all of these burdens throughout the lease period. It is therefore exposed to the same risks that direct users of purchased goods are—risks like the trucks not performing as advertised. It is for this reason that the Legislature extended the VCPA's protections not only to businesses that directly use purchased goods, but also to businesses that purchase goods for their "benefit" or "in connection with the operation" of their business. 9 V.S.A. § 2451a(1). Because plaintiff is in a position to be personally harmed by the seller's unfair or deceptive acts or practices, declining to extend the VCPA's protections to plaintiff is contrary to the VCPA's remedial purpose of protecting the public from such harms. Id. § 2451.

¶ 35. The majority concludes otherwise, citing a 1991 case and stating that "[t]he exclusion of businesses engaged in resale transactions reflects a continuing legislative determination that existing laws, such as the Uniform Commercial Code, provide adequate remedies for business-to-business disputes arising from sales of goods." Ante, ¶ 17. But this conclusion is at odds with the plain language of the statute, which extends businesses the same protections as individuals, and with our prior holding that under the 1997 amendments that "business entities are entitled to the same rights . . . as other consumers." Rathe Salvage, 2008 VT 99, ¶ 21.

¶ 36. The majority also cites to two passages from the legislative history of the 1997 amendments that it suggests show that the amendments were intended "to extend the protections of the VCPA to business purchasers of goods that they used as consumers, but not to purchasers of inventory to be resold." Ante, ¶ 18. This reading of the legislative history conflicts with the

20

plain language of the statute and consequently must be rejected.  See <u>Vt. Dev. Credit Corp. v. Kitchel</u>, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (noting that where provisions of statute "are clear and unambiguous on their face," there is "no need to consider the legislative history," and that statements by legislative witnesses, "standing alone, have never been regarded as sufficiently compelling to justify deviation from the plain language of a statute").  First, the majority's reference to "inventory to be resold" again elides the distinction between leasing and resale, suggesting without analysis that a lease is somehow the same as a resale.  And second, the conclusion that the 1997 amendments apply only to "business purchasers of goods that they used as consumers" conflicts with the statutory language extending protections not only to direct users, but also to business purchases "for the . . . benefit of the person's business or in connection with the operation of the person's business."  9 V.S.A. § 2451a(1).  If the Legislature intended to provide protection only for businesses that personally used the purchased goods, it would not have included these alternative types of purchases.  I am not persuaded by the two legislative-history passages because they are at odds with the plain statutory language.

¶ 37.    In sum, I would hold that plaintiff qualifies as a consumer under the VCPA with respect to its purchases of trucks because the primary purpose of the purchase was for leasing the trucks, not reselling them.  Leasing is distinct from resale under the terms of the statute, and a purchase for lease qualifies as being for the benefit of the purchaser.  These conclusions are in accord with both the text and the remedial purpose of the statute.  Accordingly, I respectfully dissent.

¶ 38.    I am authorized to state that Justice Waples joins this dissent.

_____
Chief Justice